**CIVIL ACTION NO. 4:10CV-00030-JHM**

**ESTATE OF STEPHEN W. DOHONEY**
**By and through the Administratrix,**
**TAMARA DOHONEY, and R.W.D. and K.E.D.**
**Minors, by and through their Natural Mother,**
**TAMARA DOHONEY and TAMARA**
**DOHONEY, Individually**                                            **PLAINTIFFS**

**V.**

**INTERNATIONAL PAPER COMPANY**                                   **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant for summary judgment [DN 36], on a motion by Defendant to strike portions of Plaintiffs' Response to the Motion for Summary Judgment [DN 41], and on a motion by Plaintiffs for a hearing on the motion for summary judgment [DN 44]. Fully briefed, these matters are ripe for decision.

## I. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical

doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." <u>Anderson</u>, 477 U.S. at 252.

## II. BACKGROUND

On August 28, 2009, Stephen Dohoney ("Dohoney") was electrocuted and died while on the business premises of International Paper Company at its mill located in Henderson, Kentucky (hereinafter "the Mill"). (Complaint at ¶ 6.) The Mill produces container board products from recycled raw material. At the time of the accident, Dohoney was employed by Konecranes, a manufacturer and seller of cranes. Pursuant to the terms and conditions of a service agreement for "Crane and Hoist Services" between International Paper Company and Konecranes, Dohoney and a co-worker were at the Mill to conduct the annual inspection of the cranes and to complete three repairs. Specifically, the three repairs included the (1) repair of the bridge panel connector X-13 on the Mill's maintenance crane; (2) replacement of the limit switch wiring on the sixty-ton crane hoist trolley unit numbers 1 and 3; and (3) repair of the pendant on the hydrapulper crane. (Cathy Henning Aff. ¶ 3 and Michael Jones Aff. ¶ 3.) While Dohoney was replacing the limit switch wiring on the 60-ton crane, he contacted a live electrical wire and was electrocuted. Mill Manager David Haynes testified that the replacement of wiring on the limit switches had never been performed at the Mill prior to the accident. The record reflects that after the accident, James

Brantley, an employee of International Paper, replaced the house crane wiring on the limit switches – a similar repair to that which Dohoney was performing when the accident occurred at the Mill. (James Brantley Dep. 17-18.)

Following Dohoney's accident, Plaintiffs made a claim for, and received, workers' compensation benefits against Dohoney's employer, Konecranes. The terms and conditions of the International Paper and Konecranes service agreement in effect at the time of the accident required Konecranes to carry workers' compensation insurance up to the Kentucky statutory limit for each employee. Konecranes secured the payment of workers' compensation for Dohoney's death as part of his employment with that company. Likewise, International Paper carried workers' compensation coverage insurance in the event that Konecranes did not. (David Arick Aff. ¶ 3.)

In March of 2010, Plaintiffs filed suit against International Paper Company asserting claims for negligence, negligence per se, res ipsa loquitur, and punitive damages. Plaintiffs allege that the Defendant "failed to exercise ordinary and reasonable care" in operating the Mill in a safe manner. (Complaint at ¶¶ 7, 8.) Specifically, Plaintiffs claim that the control panel that Dohoney used to disconnect the power to the crane was broken and that Defendant was aware of this defective condition of the bridge disconnects for over a year and a half. Plaintiffs assert that as a direct and proximate result of the breach, Dohoney was electrocuted and killed while repairing the overhead crane at the Mill. (Complaint at ¶ 9.) Defendant filed responsive pleadings denying liability for the accident. In addition, Defendant affirmatively plead that Plaintiffs' claims are barred by the exclusive remedy sections of the Kentucky Workers' Compensation Act. Defendant argues that it is a "statutory employer" within the provisions and definitions in KRS § 342.610(2)(b) and KRS § 342.690. Plaintiffs contend that International Paper was not the statutory employer of Dohoney

because Dohoney was not performing work that is a regular or recurring part of the work of Defendant. Pursuant to the scheduling order, the parties have taken discovery on the statutory employer defense and have now filed cross-motions for summary judgment on this issue.

## III. DISCUSSION

KRS §342.690(1) provides that if an employer secures payment of workers' compensation under Chapter 342, "the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer . . . ." For purposes of this section, "the term 'employer' shall include a 'contractor' covered by subsection (2) of KRS 342.610, whether or not the subcontractor has in fact, secured the payment of compensation." Granus v. North Am. Philips Lighting Corp., 821 F.2d 1253, 1257 (6th Cir. 1987) (citing KRS § 342.690).

KRS §342.610(2) provides in part as follows:

A contractor who subcontracts all or any part of a contract and his or her carrier shall be liable for the payment of compensation to the employees of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured the payment of compensation as provided for in this chapter. . . . A person who contracts with another: . . .
(b)      To have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person
shall for the purposes of this section be deemed a contractor, and such other person a subcontractor. . . .

KRS §342.610(2).

"The purpose of the provision of KRS 342.610 that a contractor is liable for compensation benefits to an employee [of] a subcontractor who does not secure compensation benefits is to prevent subcontracting to irresponsible people." Fireman's Fund Ins. Co. v. Sherman & Fletcher, 705 S.W.2d 459, 461 (Ky. 1986). By the same token, "if a defendant qualifies as a contractor, 'it has no liability in tort to an injured employee of a subcontractor' once worker's compensation benefits

4

are secured." <u>Giles v. Ford Motor Co.</u>, 126 Fed. Appx. 293, 295 (6th Cir. April 4, 2005)(quoting

<u>Fireman's Fund</u>, 705 S.W.2d at 461).    Essentially, "the Act treats the employees of a subcontractor

as *de jure* employees of the contractor for the purposes of guaranteeing worker's compensation

benefits." <u>Giles</u>, 126 Fed. Appx. at 295.

The issue presented in this case is whether the work being performed by Dohoney, as an

employee of Konecranes, was a "regular or recurrent" part of Defendant's business under KRS §

342.610(2)(b).    KRS § 342.610(2)(b) provides that a contractor is one who contracts with another

"[t]o have work performed of a kind which is a regular or recurrent part of the work of the trade,

business, occupation, or profession of such person." KRS § 342.610(2)(b).    Under Kentucky law,

"recurrent" simply means occurring again or repeatedly. <u>Daniels v. Louisville Gas and Elec. Co.</u>,

933 S.W.2d 821, 924 (Ky. Ct. App. 1996); <u>Pennington v. Jenkins-Essex Constr., Inc.</u>, 238 S.W.3d

660, 664 (Ky. Ct. App. 2006).    "Regular" generally means customary or normal, or happening at

fixed intervals. <u>Id</u>.  <u>See also</u> <u>General Elec. Co. v. Cain</u>, 236 S.W.3d 579, 588 (Ky. 2007)("It is work

that is customary, usual, or normal to the particular business (including work assumed by contract

or required by law) or work that the business repeats with some degree of regularity, and it is of a

kind that the business or similar businesses would normally perform or be expected to perform with

employees.").    Contrary to Plaintiffs' argument, "[e]ven though [a Defendant] may never perform

that particular job with his own employees, he is still a contractor if the job is one that is usually a

regular or recurrent part of his trade or occupation." <u>Fireman's Fund</u>, 705 S.W.2d at 462.  <u>See also</u>

<u>Blasko v. Mercy Health Partners-Lourdes, Inc.</u>, 2010 WL 5018168, *4 (Ky. Ct. App. Dec. 10, 2010);

<u>Black v. Dixie Consumer Products LLC</u>, 2010 WL 497668, *6 (W.D. Ky. February 5, 2010);

<u>Burroughs v. Westlake Vinyls, Inc.</u>, 2008 WL 5192237, *4 (W.D. Ky. Dec. 11, 2008); <u>Franke v.</u>

Ford Motor Co., 398 F. Supp.2d 833, 839 (W.D. Ky. Oct. 31, 2005); Daniels v. Louisville Gas and Elec. Co., 933 S.W.2d 821, 823 (Ky. Ct. App. 1996). Thus, the fact that a defendant did not ordinarily perform the work itself, but usually subcontracted the work to others is a "distinction ... of no significance" under the statutes. Granus, 821 F.2d at 1257.[1]

The courts in both Kentucky and the Sixth Circuit have consistently held that routine repairs and maintenance projects are a "regular or recurrent" part of business operations. Granus, 821 F.2d at 1257 (rebricking of a tank furnace used at glass factory was a regular and recurrent part of defendant's glass making business); Burroughs, 2008 WL 5192237, *5 (contractor's repair of pipes used to distribute defendant's product was a regular and recurrent part of defendant's business); Thompson v. The Budd Co., 199 F.3d 799 (6th Cir.1999)(holding that the maintenance of heating, ventilation, and cooling system at an automobile parts stamping facility was regular and recurrent part of business); Murphy v. Louisville Gas & Electric Co., 2007 WL 3231550 (W.D. Ky. October 30, 2007)(contractor's preventive maintenance at defendant's power plant was a regular and recurrent part of defendant's business); Franke v. Ford Motor Co., 398 F. Supp. 2d 833, 839 (W.D. Ky. Oct. 31, 2005)(contractor's installation of a new type of lift table at defendant's automobile manufacturing plant was a regular and recurrent part of business); Daniels, 933 S.W.2d 821 (finding that EPA emissions tests performed by contracted experts nine times per year were a regular part of LG & E's business); Hosack v. Grayson Rural Electric Co-op, 2004 WL 2482609 (Ky. Ct. App.

---

[1]Plaintiffs argue that the Kentucky Supreme Court in General Electric Co. v. Cain, 236 S.W.3d 579 (Ky. 2007), created a new test for determining whether up-the-ladder immunity applied and overruled or "extinguished" the holding in Fireman's Fund v. Sherman & Fletcher, 705 s.W.2d 459 (Ky. 1986). This argument was rejected by the Kentucky Court of Appeals in Forbes v. Dixon Electric, Inc., 332 S.W.3d 733, 738 (Ky. Ct. App. 2011)("We do not believe that the Supreme Court [in Cain] created a new test, but rather it summarized the existing test.").

Nov. 5, 2004) (maintenance of power line of electric company is regular and recurrent part of work of electric company). See also Himes v. United States, — F.3d —, 2011 WL 2708576 (6th Cir. July 13, 2011)(citing Bratcher v. Conopco, Inc., 2008 WL 2065202, * 2 (Ky. Ct. App. May 16, 2008)("Such maintenance work on an employer's physical plant is classified as a matter of law to be a regular and recurrent part of the employer's business.")). In each case, the court held that the maintenance and repair work constituted work of a kind which is a regular or recurrent part of the hiring company's business, and therefore, the hiring company was deemed a contractor pursuant to KRS § 342.610(2)(b).

In the present case, Konecranes installed three cranes at the Mill in 1995 to facilitate the manufacture of paper products. (James Hunt Aff. ¶ 5.) The sixty-ton bridge crane is used daily to transport thirty-ton rolls of paper sixty feet down from the second level to the ground floor of the Mill and across the facility to complete the manufacturing process. (Id.) No other crane at the Mill has the capacity to move the thirty-ton rolls of paper. (Id. at ¶ 6.) James Hunt, International Paper Reliability Engineer, testified that the regular repair and maintenance of the 60-ton crane is an essential part of the Mill's business. (Id.) From 1995 through August 2009, each of the Mill owners had a service contract with Konecranes to complete monthly crane inspections and crane repairs. (Id. at ¶ 7.) Specifically, International Paper had a contract with Konecranes to provide crane and hoist services for the 2009 calendar year. (Cathy Henning Aff. ¶ 3.) From July 2002 through the date of the accident, Konecranes employees serviced the Mill cranes over 150 times. (Hunt Aff. ¶ 7.) At the time of the accident, Dohoney was replacing the limit switch wiring on the 60-ton crane pursuant to the service contract. (Michael Jones Aff. ¶ 5.) Clearly, the periodic maintenance and repair of the cranes are integral to the work performed at the Mill.

Additionally, the cost of the work done by Konecranes was deducted as a business expense by International Paper, rather than capitalized and depreciated. (Kimberly Swift Aff. ¶ 3.) "Capitalized costs tend to indicate that the business was not the injured worker's statutory employer, while expensed costs tend to indicate that the owner was the statutory employer." Cain, 236 S.W.3d at 588. See also Wakefield v. Manning Equipment, Inc., 2008 WL 898079, *2 (Ky. Ct. App. 2008); Burroughs, 2008 WL 5192237, *5. Thus, based on the record before the Court, and the cases discussed above, the Court finds that there is no genuine issue of material fact that the periodic maintenance and repair of the cranes by Konecranes employees are a regular or recurrent part of International Paper's business.

The Court rejects the Plaintiffs' argument that because the replacement of the wiring on the limit switch of the 60-ton crane had never been performed at the Mill, the repair cannot be classified as regular or recurrent. The fact that a particular component of the crane had not previously needed repair does not mean that the repair cannot be deemed "regular or recurrent." As discussed above, it is uncontested that International Paper regularly performed preventative maintenance and repairs on all the cranes at the Mill. In fact, the record reflects that Konecranes repaired different components of the cranes over 150 times from July 2002 to the date of the accident. Plaintiffs produce no evidence that the replacement of limit switches on cranes is not a part of the maintenance of cranes or is not covered under the service contract in question. Ultimately, the Court finds that the replacement of limit switches is part of the maintenance and repair of the crane, and is a "regular or recurrent" part of business operations of International Paper. Furthermore, the fact that the majority of the service and repair work on the crane was performed by Konecranes instead of International Paper's personnel is of no significance under the statute. Granus, 821 F.2d at 1257.

As stated above, "[e]ven though [a Defendant] may never perform that particular job with his own employees, he is still a contractor if the job is one that is usually a regular or recurrent part of his trade or occupation." <u>Fireman's Fund</u>, 705 S.W.2d at 462.

Having concluded that International Paper contracted with Konecranes to perform "work of a kind which is a regular or recurrent part" of International Paper's business, International Paper is deemed to be a contractor within the meaning of the Kentucky Workers' Compensation Act.  Thus, Plaintiffs' complaint is barred by the exclusive remedy of workers' compensation, and the Defendant's motion for summary judgment is granted.

### IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant for summary judgment [DN 36] is **GRANTED**.  **IT IS FURTHER ORDERED** that the motion by Defendant to strike portions of Plaintiffs' Response to the Motion for Summary Judgment [DN 41] is **DENIED** and the motion by Plaintiffs for a hearing on the motion for summary judgment [DN 44] is **DENIED**. The Court will enter a judgment consistent with this Opinion.

cc: counsel of record